IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ANTHONY DENNIS TESOLOWSKI, | ) | CIVIL ACTION NO. 9:15-2540-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits ("DIB") on May 27, 2014 (protective filing date), alleging disability beginning August 7, 2013, due to traumatic brain injury (TBI), post-traumatic headaches and post-concussive syndrome, bursitis of his right knee, right foot degenerative arthritis with hammer toe, left (dominant) shoulder rotator cuff tendonitis, lumbar degenerative disc disease and joint disease, right ankle degenerative arthritis, left ankle degenerative arthritis, left foot degenerative arthritis with hammer toe, bilateral pes planus, post-traumatic stress disorder (PTSD), and a cognitive disorder. (R.pp. 18, 207, 225). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 16, 2015. (R.pp. 35-69). At the hearing, Plaintiff amended



his alleged onset of disability date to June 25, 2014. (R.p. 43). The ALJ thereafter denied Plaintiff's claim in a decision issued May 7, 2015. (R.pp. 18-29). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5). Plaintiff then filed this action in United States District Court.

Plaintiff asserts that there is not substantial evidence to support the ALJ's decision such that this Court should reverse the decision of the ALJ and Appeals Council and order the Commissioner to award benefits, or alternatively that the decision should be remanded to the Commissioner for further consideration. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### **Brief Medical History and Background Information**

Plaintiff served in the Army from 2001 until he was honorably discharged on medical retirement in June 2014. In 2004, Plaintiff's Bradley (Humvee-type) vehicle suffered an enemy rocket blast in Iraq that caused him to be thrown backwards and upside down and to lose consciousness. In 2007 he was hit by a mortar while in combat in Iraq, and he again lost consciousness. Six months later in Iraq, Plaintiff suffered a third blow to his head when he was slammed against the chain inside his Bradley vehicle. Then, while working on his car in 2014, Plaintiff tried to stand up quickly, at which time he hit his head and lost consciousness. (R.p. 1019).

Plaintiff appears to primarily have received medical care through Department of Defense healthcare providers until the time of his discharge. The record contains medical notes from May 2013 to May 2014 showing treatment primarily at Fort Benning, Georgia. (R.pp. 342-1017). Thereafter, Plaintiff primarily sought treatment at Veterans Administration medical centers. (R.pp. 1034-1140, 1147-1164).



In July 2014, Dr. Robin Moody, a psychologist, conducted IQ and other testing on the Plaintiff and concluded that he had PTSD, a mild learning disability related to reading and writing expression, and a mild neurocognitive disorder. Based on Plaintiff's deficient working memory and the results of processing speed testing, Dr. Moody opined that Plaintiff had poor concentration, persistence, and pace. Dr. Moody opined that Plaintiff could carry out simple one-step instructions but would have difficulty with more complex or multi-step instructions. Dr. Moody also noted that Plaintiff could complete light chores and prepare his own meals, but needed reminders to take medication and complete routine daily tasks, and that while Plaintiff could drive he easily got lost when attempting to read a map. (R.pp. 1018-1024).

Also in July 2014, Dr. Xanthia Harkness, a state agency psychologist, opined after a review of Plaintiff's records that Plaintiff could perform simple, unskilled tasks; had a mild restriction in his activities of daily living; moderate difficulties in maintaining concentration, persistence, or pace; with no repeated episodes of decompensation of extended duration. (R.p. 78-80, 83-85). In August 2014, Dr. William Hopkins, a state agency physician, opined after a review of Plaintiff's records that Plaintiff could perform a range of light work[1] with restrictions of frequent stooping, kneeling, crouching, crawling, and climbing ramps and stairs; occasionally climbing ladders, ropes, and scaffolds; and avoidance of concentrated exposure to extreme temperature, humidity, and hazards. (R.pp. 81-83).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

4



Plaintiff had a consultative examination performed by Dr. Tony Rana in August 2014. Plaintiff reported that Mobic and rest helped his back pain, and that surgery had not been recommended for his condition. On examination Dr. Rana observed that Plaintiff walked without the aid of an assistive device, exhibited poor motivation, had less than normal range of motion in his low back and ankles but had normal neurological findings, and exhibited some anxiety and an euthymic mood. Dr. Rana diagnosed Plaintiff with lower back pain without evidence of radiculopathy and bilateral ankle pain without instability as a result of service-connected soft tissue injuries. (R.p. 1030).

In November 2014, Dr. Anna Williams, another state agency psychologist, agreed with Dr. Harkness's opinion. (R.pp. 98-100, 104-105). That same month Dr. Carl Anderson, a state agency physician, opined that Plaintiff could perform a range of light work with some postural and environmental limitations. (R.pp. 101-104).

In February 2015, Jerome Francis Mega, a nurse practitioner (NP) at the VA, completed a form titled "Physician's Questionnaire" in which he opined that due to symptoms of multiple joint pain, back pain, and headaches, Plaintiff could sit for about two hours total and stand/walk for less than two hours in an eight-hour work day; that he needed to walk every 45 minutes for three to five minutes; that he frequently would experience pain and symptoms that would interfere with his attention and concentration; that he was incapable of performing even low stress jobs; that he required unscheduled breaks every one to two hours; required a sit-stand option; occasionally could lift ten pounds and rarely lift twenty pounds; and would be absent for more than four days monthly. (R.p. 1141-1143). NP Mega also completed a "Headaches Questionnaire" in March 2015 in which he opined that Plaintiff had mild to moderate continuous head pain and



migraines that lasted one to six hours.  He noted that medication (Fioricet and Naproxen as needed) and lying down in a dark quiet room relieved Plaintiff's migraines.  His prognosis for Plaintiff's headaches was "good with medication control."  (R.pp. 1145-1146).

### **Discussion**

A review of the record shows that Plaintiff, who was forty years old on his alleged disability onset date, has a high school education and past relevant work as an infantryman and a warper.  (R.pp. 28, 221, 226-227).  In order to be considered "disabled" within the meaning of the Social Security Act ("SSA"), Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of degenerative disc disease, osteoarthritis, sleep apnea, an organic mental disorder, and PTSD/anxiety (R.p. 20), he nevertheless retained the residual functional capacity ("RFC") for a restricted range of light work. Specifically, the ALJ found that Plaintiff was restricted to lifting or carrying up to twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk for six hours, each, in an eight-hour workday; could frequently push or pull with his left upper extremity; could occasionally climb ladders, ropes, scaffolds, ramps, or stairs; could frequently stoop, crouch, kneel, or crawl; could frequently reach overhead with his left upper extremity; and was limited to frequent exposure to extreme cold,

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

6



extreme heat, wetness, humidity, the use of moving machinery, and unprotected heights. The ALJ also limited Plaintiff to simple, routine, and repetitive tasks; work performed in an environment free of fast-paced production requirements; work involving only simple, work-related decisions, with few, if any, work-place changes; no interaction with the public; and only occasional interaction with co-workers. (R.p. 23). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work with these limitations. (R.p. 28). However, the ALJ obtained testimony from a vocational expert ("VE") and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with these limitations, and was therefore not disabled during the period at issue. (R.pp. 28-29).

      Plaintiff asserts that in reaching this decision the Commissioner erred because he failed to evaluate his post-traumatic headaches as a severe impairment, rejected the Veteran's Administration's (VA) disability finding without following the law of the Fourth Circuit, erroneously assigned little weight to the medical source opinion of his treating nurse practitioner (Mr. Mega), failed to fully evaluate the medical source opinion of consulting examining psychologist Dr. Moody, failed to fully evaluate and weigh the testimony of Plaintiff's father concerning Plaintiff's symptoms and limitations in accordance with SSR 96-7p, and ignored the VE's testimony that there was no work that Plaintiff could perform upon a proper consideration of all of Plaintiff's alleged limitations. After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with Plaintiff that the ALJ failed to properly consider and evaluate all of the evidence, thereby requiring a remand of this case for additional review.



**I.**

**(Severe Impairment)**

With respect to Plaintiff contention that the ALJ erred by failing to find that his post-traumatic headaches were a severe impairment, the undersigned cannot determine from a plain reading of the decision whether proper consideration was given to the evidence relating to this claim. Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of failure to provide explanation or reason for rejecting or not addressing relevant probative evidence].  First, it does not appear that the ALJ considered whether Plaintiff's headaches were a severe impairment at step two of the sequential evaluation process.  (R.p. 20).  Even so, the ALJ did find numerous other of Plaintiff's impairments to be severe (id.) and continued with the sequential evaluation process. Therefore, even assuming there was an error committed at step two, it would have been harmless if the ALJ considered all of Plaintiff's impairments at later steps.  See, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Washington v. Astrue, 698 F.Supp.2d 562 (D.S.C. 2010).  However, as noted, it is unclear from the ALJ's decision whether he gave proper consideration to Plaintiff's claim of debilitating headaches at the later sequential evaluation steps.

The Commissioner contends that the ALJ properly considered this complaint because he acknowledged Plaintiff's claim of headaches in his RFC discussion.  However, other than the simple statement that Plaintiff alleged that he suffers from post-traumatic headaches (R.p. 23), and that he had limited Plaintiff's "environmental space" due to his complaints of headaches and osteoarthritis (R.p. 24), the ALJ (with the exception discussed below) did not discuss Plaintiff's testimony concerning his headaches or (importantly) the relevant medical records.  Rather, the only



time the ALJ ever actually engages in a discussion of this issue is when he finds that Plaintiff's testimony and the objective medical evidence were inconsistent because Plaintiff testified that his headaches were due to his TBI, while on an October 2014 VA report Plaintiff reported that "he had been told previously that [his headaches] were due to his anxieties and PTSD." (R.p. 27). Thus, the ALJ appears to have found that Plaintiff's claim of debilitating headaches was not credible and therefore did not consider them in making his RFC findings because Plaintiff, who is not a medical doctor, allegedly attributed the cause of his headaches to TBI rather than to anxiety and PTSD.

The record, however, contains information from both Plaintiff and his father as well as numerous medical notations concerning headaches and problems associated with this condition. In June 2013, approximately one year prior to Plaintiff's amended onset date of disability, Plaintiff reported headaches on 5 or 6 of the previous "14 days localized in the epicranius region with pain ranges from 2/10-7/10 with the duration of 60 minutes to all day depending upon the severity of the headache and the effectiveness of medication." (R.p. 826). A narrative summary in October 2013 indicates that Plaintiff had post concussion syndrome with post traumatic migraine headaches which often made him unable to train or work. (R.p. 585). It was further noted that Plaintiff was seen "at the TBI clinic for his migraine headaches and takes Maxalt as soon as the headaches start. He continues to have frequent, severe migraine headaches five times a month during which he has to leave work, lie in a dark room and take pain medication." (R.p. 588).³ NP Mega completed a separate "Headaches Questionnaire" in March 2015 in which he opined that Plaintiff experienced

---

³In addition to this notation providing support for Plaintiff's statement attributing his headaches to TBI, NP Mega's answers to the Physician's Questionnaire also appear to provide support for Plaintiff's statement, as he wrote that Plaintiff had recurrent migraines secondary to a history of TBI. (R.p. 1146).



mild to moderate continuous head pain and migraines that would last from one to six hours. (R.pp. 1145-1146). At the hearing before the ALJ, Plaintiff testified that he experienced severe migraine-type headaches two to three times a week, that they last an hour to half a day, that he took Maxalt and lay down in a dark area with the door closed until it went away; sometimes had nausea, vomiting, and had problems with sound and light bothering him; and that they hampered his concentration. (R.p. 58).

The Commissioner appears to argue that a finding that Plaintiff's headaches were not severe is supportable because NP Mega noted that medication relieved Plaintiff's migraines and Plaintiff's prognosis was good with medication control. However, this ignores NP Mega's note that Plaintiff's headaches would last from one to six hours and that relief for his headaches also involved lying down in a dark room (R.p. 1146), which obviously would potentially affect Plaintiff's ability to perform work. In any event, the ALJ did not discuss any of these records or findings in deciding that Plaintiff's headaches were not a severe impairment, so there is no way to know what import or consideration, if any, was given to this evidence as why it was rejected. Cotter, 642 F.2d at 700 [listing cases remanded because of failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]. The ALJ may have in fact considered all of this evidence and found that it did not support Plaintiff's claim but, if so, it is not apparent in the decision itself. Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]. Therefore, this action should be remanded to the Commissioner for a proper consideration and discussion of the evidence relating to whether Plaintiff's headaches were a severe impairment and to continue the sequential evaluation process.

10



## II.

### (VA Rating)

Plaintiff also argues that the ALJ erred by failing to give substantial weight to the decision of the VA awarding him a 100% disability rating. While a VA disability determination is not binding on the SSA, Plaintiff is correct that such a determination may be entitled to substantial weight. See Bird v. Commissioner of Social Security, 699 F.3d 337, 343-344 (4th Cir. Nov. 9, 2012) ["SSA must give substantial weight to a VA disability rating"]. Although an ALJ "may give less weight to [a] VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate;" Bird, 699 F.3d at 343; it is incumbent upon the ALJ to explain his or her rationale if they do so. See SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No. 10-339, 2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761, 2010 WL 1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision]. The ALJ did not comply with this requirement in this case.

The ALJ acknowledged in his decision that the VA had awarded Plaintiff 100% disability and that recent law required an ALJ to give a VA opinion substantial weight. However, although the ALJ stated that he had considered the VA rating "thoughtfully," he essentially dismissed the VA's findings by then stating that 'VA ratings rely more on subjective symptotology without

11



concern for residual functional capacity, which is prime consideration for SSA disability ratings." (R.p. 26). While this may be true, it is not itself a basis on which to disregard the VA's findings. Bird, 699 F.3d at 343-344. Further, the ALJ did not actually specify what weight he was giving the VA disability finding, as required by Bird and Jamiah. Rather, he simply noted other agencies (such as the VA) may apply different rules and standards than the SSA and that he was not bound by the VA decision. Nor does he discuss the specific findings made as to the VA disability rating, other than to state the VA's conclusion that Plaintiff had a 100% disability rating.

The only specific rationale cited by the ALJ in his VA rating discussion was that Plaintiff "was able to complete 20 hours of college, his physical examination was within the normal ranges; and the other medical records do not show his impairments are as severe as alleged." (R.p. 26). However, it is unclear how Plaintiff's ability to complete 20 hours of college indicates that the VA rating should be discounted, as to the extent this achievement is supposed to show that Plaintiff's mental impairments were not as severe as the VA rated, it appears that these college courses were completed prior to Plaintiff's diagnoses of TBI, PTSD, and post-traumatic headaches.[4] Additionally, as noted above, the ALJ did not properly consider and discuss Plaintiff's headaches in his decision, so it is unclear how he could have in turn properly considered the VA rating, which provided Plaintiff a 30% disability due to post-traumatic headaches.

As such, the ALJ's discussion of the VA rating is not sufficient to "'clearly demonstrate' that ... a deviation from a finding of substantial weight is appropriate." Id. (quoting Bird, 699 F.3d at 343). Thus, this action should be remanded to the Commissioner for a more proper

---

[4]Plaintiff's attorney stated at the hearing that Plaintiff had a 100% disability rating from the military on June 25, 2014. (R.pp. 41-42). However, a neurophyscological screening entry from May 2013, well before Plaintiff's amended onset date of disability, noted that Plaintiff "has 20 credit hours through Central Texas in business management." (R.p. 894).



weighing of Plaintiff's VA disability rating pursuant to the method outlined in Bird. Cf. Rosales v. Colvin, No. 6:14–cv–04265–RBH–KFM, 2015 WL 9598864, at *10, (Dec. 16, 2015)[recommending remand for assessment of VA disability rating in accordance with the Bird standard], adopted by 2016 WL 55278 (D.S.C. Jan. 5, 2016), Lawson v. Colvin, No. 0:14–CV–4662–DCN–PJG, 2015 WL 7769234, at *4 (Nov. 17, 2015)[same], adopted by 2015 WL 7776897 (D.S.C. Dec. 2, 2015); Sims v. Colvin, No. 2:14–CV–03005–TLW, 2015 WL 5474760, at *6 (D.S.C. Sept. 17, 2015) [remanding for evaluation of VA ratings in accordance with the Bird standard]; Cobbs v. Colvin, No. 1:12–CV–03472–JMC, 2014 WL 468928, at *8 (D.S.C. Feb. 4, 2014) [same].

### III.

### (RFC Analysis with Respect to Concentration, Persistence and Pace)

Finally, the ALJ specifically found in his decision that, with regard to concentration, persistence or pace, the Plaintiff had moderate difficulties. (R.p. 22). To account for this limitation (as well as his findings that Plaintiff also had mild difficulties in social functioning and a mild restriction in his activities of daily living) the ALJ limited Plaintiff to jobs requiring only "simple, routine, repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, work-place changes. [Plaintiff] should have no interaction with the public and only occasional interaction with co-workers". (R.p. 23); see (R.p. 24 ["I limited [Plaintiff's] work to simple, repetitive tasks, his work place decisions and changes, and his interaction with others because of his mental conditions"]). This decision constitutes reversible error in this case.

Restricting a claimant to routine, simple work to account for mental impairments, to include a moderate restriction with respect to concentration, persistence or pace, is an RFC formula

13



that has found support in previous case law, and which this Court has itself upheld as sufficient in some earlier decisions. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]. However, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work'". Mascio, 780 F.3d 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). That is exactly what the ALJ did in this case. (R.p. 24). After Mascio, however, such a summary finding is no longer sufficient, as the Fourth Circuit has held that the ability to perform simple, routine tasks is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace. Mascio, 780 F.3d 638.

That distinction is particularly significant here, as the ALJ (in finding that Plaintiff had moderate difficulties with respect to concentration, perspective or pace) noted that Plaintiff could concentrate "long enough to watch a movie". (R.p. 22). That is hardly the length of an average eight hour workday. It is also unclear that the ALJ fully considered the opinion of consultative psychologist Robin L. Moody, who examined Plaintiff in July 2014 and administered IQ and other cognitive tests and opined that Plaintiff had poor concentration, persistence and pace. (R.pp. 1018-1024). Nor did the ALJ include any questions relating to Plaintiff's ability stay on task in his

14



hypothetical to the VE at the hearing. (R.p. 65). Cf. Mascio, 780 F.3d 638 [commenting that "[n]otably, the hypothetical said nothing about [Plaintiff's] medical limitations"]. However, when later asked if Plaintiff would be able to work if he was unable to stay on task 20% or more of the workday, the VE answered no, that Plaintiff would not be able to work with that limitation. (R.p. 67).

While it may be that the ALJ will find, based on the evidence, that Plaintiff's moderate impairment in being able to concentrate and stay on task would not affect his ability to perform the routine, simple work identified in the decision; See Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a moderate concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; he did not make that determination or finding in his decision, and this Court may not do so in the first instance. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) [Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]. Therefore, this case must be reversed and remanded for consideration of Plaintiff's RFC in compliance with Mascio.

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for a proper

15



evaluation and consideration of Plaintiff's headaches, the VA's disability rating, and his mental impairment in light of Mascio. With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 22, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

